UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------------- x
CHW GROUP, INC. a/k/a Choice Home Warranty  :

                        *Plaintiff*,    :

       - against -                        :

BETTER BUSINESS BUREAU OF NEW JERSEY, :
INC. and MELISSA COMPANICK
                                    :

                      *Defendants*.

                                    :

                                    :
---------------------------------------------------------------- x

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff CHW Group, Inc. a/k/a Choice Home Warranty ("CHW"), by its attorneys Oved & Oved LLP, complaining of the Defendants Better Business Bureau of New Jersey ("BBB") and Melissa Companick ("Companick") (collectively "Defendants"), upon information and belief, sets forth and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action because it concerns Defendant's false advertising in violation of Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and § 1338. The Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. §1367(a) in that the state law claims are so related to the claims over which the Court possesses original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Defendants are subject to personal jurisdiction in this Court because the they reside, and conduct business, in the State of New Jersey.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events giving rise to CHW's claims occurred here and because Defendants are subject to personal jurisdiction in this district.

## PARTIES

4. Plaintiff CHW is a New Jersey corporation with its principal place of business in Middlesex County, New Jersey.

5. Defendant BBB purports to be a New Jersey 501(c)(6) tax exempt corporation with a principal place of business in Trenton, New Jersey.

6. Defendant Companick is a resident of the State of New Jersey and is the President of BBB.

## FACTUAL BACKGROUND

**A.     CHW's Business**

7. CHW sells home warranties to consumers, protecting them against the high cost of repair or replacement of properly maintained major household systems and appliances such as dishwashers, refrigerators, and stoves (the "Warranties").

8. Whenever a customer has an issue with an item covered by one of CHW's Warranties, the customer contacts CHW's claims center and CHW provides repair or replacement as required by the Warranties.

9. CHW is known for its excellent customer service, and its prompt resolution of customer issues and disputes and, as a result of such dedication to their clients, as of May 2011, CHW has sold thousands of home warranties throughout the country.

**B.     BBB'S Business**

10. BBB purports to provide consumers with, *inter alia,* the ability to: (i) "check out" a business or charity's reputation both online and through direct correspondence with BBB; and (ii) file complaints against those same businesses and charities.

11. BBB claims that its mission is to: (1) create a community of trustworthy business, (2) set standards for marketplace trust, (3) encourage and support best practices, (4) celebrate marketplace role models, and (5) denounce substandard marketplace behavior.

C. **BBB's Accreditation and Letter Grading Programs**

12. In furtherance of the foregoing, BBB has adopted two different rating programs for businesses.

13. The first, is a purported "accreditation program" whereby the BBB—knowing that consumers view them as an unbiased trustworthy organization—utilizes its reputation to allow businesses who pay to BBB a substantial fee to be labeled as trustworthy or "Accredited" by BBB.

14. The only concrete measurable requirement for Accreditation is the payment to BBB an annual fee. And the amount of the annual fee varies based on an undisclosed formula, and can range from hundreds to thousands of dollars per year.

15. To obfuscate the true nature of what BBB is doing, BBB classifies (on its tax returns and in public) these fees as donations, but in truth, these "donations" are charges for accreditation and in return for a "donation" a business receives preferential treatment from BBB in the form of a better rating.

16. The second is a letter grading system (the "Letter Grading System") that the BBB introduced in January 2009, whereby the BBB utilizing an undisclosed and unknown formula, assigns letter grades to businesses ranging from A+ to F (the "Letter Grade Rating").

17. Specifically, BBB's employees arbitrarily assign numerical values to different factors (*i.e.* corporate size, number of complaints, severity of complaints, duration complaint is outstanding, etc.).

18. Those arbitrarily generated numerical values are then inputted into an undisclosed algorithm to generate the Letter Grade Rating giving this arbitrary paradigm an air of objectivity.

3

19. But there is absolutely nothing objective about the grade. In fact, BBB has the power and often utilizes the power to completely disregard a businesses' letter grade and give that business a "no rating" if "BBB believes the assigned grade does not represent an appropriate indication of the BBB's confidence that the business is trustworthy and will make a good faith effort to resolve any customer concerns."

20. Thus there is nothing objective about the Letter Grading System and BBB has the right to arbitrarily disregard any business's letter grade at its whim.

21. Regardless of its wholly subjective right to ignore its own formula at its election, the Letter Grading System is in and of itself inherently subjective and heavily (and arbitrarily) skewed in favor of businesses that pay BBB money.

22. Specifically, accredited businesses receive a rating at a minimum of two letter grades higher than a comparable non-accredited business.

23. This grade discrepancy exists even when a non-accredited business has a larger number of customers than a comparable accredited business, fewer customer complaints than the accredited business, and has undertaken to resolve all customer complaints received.

24. By creating this letter grade discrepancy, BBB has wrongfully conferred a huge benefit to businesses who pay to become Accredited. Essentially, BBB is charging businesses for its seal of approval, and acting as a paid spokesperson for that business.

**D.** **BBB Viciously Maligns CHW and Ruins its Business to Extort Money from CHW**

25. Since as early as May 2008, BBB has listed CHW on its website and provided consumers with a rating of CHW.

26. Beginning in January 2009, BBB assigned a letter grade to CHW and made that letter grade available to consumers via their online platform.

27. Since initiating its rating on the BBB Online system, BBB would send CHW copies of any complaints that consumers had filed against CHW with BBB and would provide CHW with a time period to respond to the complaint.

28. CHW always responded immediately to any complaints it received and provided BBB with its responses.

29. Disturbingly, many times, even after CHW providing BBB with its response to consumer complaints, BBB would still list a complaint as unresolved thereby negatively affecting CHW's rating for no reason.[1]

30. Only after CHW repeatedly provided BBB and Companick with documentation reflecting the resolution of alleged complaints would BBB finally mark a complaint resolved.

31. Indeed, it is the BBB alone that deems a complaint "resolved" or "unresolved" regardless of whether a business has adhered to its own corporate policies that complaining customers agreed to be bound by.

32. However, the damage was already done and CHW's rating was negatively affected by BBB's willful refusal to properly process CHW's proper handling of consumer complaints, resulting in a marked loss of business and good-will.

33. Further, despite promptly responding to all of the consumer complaints received from BBB, CHW has consistently received a letter grade between D- and F.

34. When CHW inquired about why it had an F rating, Companick informed CHW that the rating was automatically computed based on unresponded to consumer complaints.

35. One example demonstrates just how absurd and arbitrary BBB's "formula" actually is.

---

[1] BBB claims that it closely monitors thousands of businesses on an ongoing basis. However, BBB has 15 employees and receives tens of thousands of complaints every year. Based on its scant number of employees and the high volume of complaints it is impossible that BBB actually vets each and every complaint it receives. Even if

*(Footnote continued)*

5

36. In 2010, when BBB received a complaint against CHW and forwarded that complaint to CHW for a response, CHW responded immediately. The complaining consumer did not respond to CHW's response to the complaint for several weeks, and when the complaining consumer finally did respond, CHW again responded within 24 hours. Nevertheless, because the complaining consumer took so long to reply to CHW's initial prompt response, BBB gave CHW a negative grade because too much time lapsed before the consumer complaint was resolved even though the time it took to resolve the complaint was attributable entirely to the consumer and not CHW.

37. Giving CHW a negative grade for the consumer's delay is not only unfair, but it is a blatant misrepresentation to the public of the quality of CHW's customer service and trustworthiness. Moreover, BBB and Companick recklessly disregarded the truth regarding CHW's handling of this consumer complaint by attributing a negative rating to CHW for conduct that cannot be credibly attributed to CHW.

38. There are many other examples of Defendants' misconduct and misrepresentation of CHW's handling of consumer complaints.

39. Because BBB had misrepresented the truth of CHW's customer relations conduct (and Companick took no steps to correct the misrepresentation even after being put on notice of it), CHW requested on numerous occasions an appeal of its letter grade and BBB informed CHW that there was no such mechanism of internal review or appeal.

40. Despite being repeatedly told by Companick and others that there was no such thing as an appeal, CHW continued to request an appeal of its letter grading because it knew that other businesses were able to pursue such an appeal.

---

*(Footnote continued)*
all 15 BBB employees worked around the clock analyzing consumer complaints such a thorough review would be impossible.

41. Indeed, on March 31, 2011 BBB told CHW yet again in an e-mail "there is no appeals process."

42. But three weeks later, on April 18, 2011, in another e-mail, BBB not only admitted that there was an appeals process but provided CHW what information was required to pursue an appeal.

43. This is further evidence that there is absolutely nothing objective or unbiased about BBB's ratings system, and as applied to CHW, BBB had absolutely no interest in truthfully and accurately reviewing CHW's business.

44. Instead, BBB's true goal is to extort money from CHW by offering CHW the opportunity to improve its Letter Grade Rating by paying money to BBB.

45. Specifically, on numerous occasions while CHW was seeking an explanation for its letter grade, BBB solicited CHW to pay the annual fee to become Accredited.

46. BBB specifically advised CHW that, if CHW paid the fee for Accreditation, CHW's Letter Grade Rating would dramatically improve.

47. In fact, BBB's rating of CHW is artificially deflated because CHW has refused to pay to be Accredited and because BBB was negligent in processing CHW's responses to consumer complaints.

48. Indeed, a review of the BBB's website reveals that there exist smaller, similarly situated and significantly larger companies in the exact same industry as CHW who have more consumer complaints than BBB but have A- to A+ ratings exclusively as a result of their paying BBB to become Accredited.

49. This grade deflation is evident by examining the records of comparably sized companies on BBB online business rating platform, records that were provided to Cpmpanick who summarily ignored them. Such an examination reveals that Accredited businesses receive

far better ratings than CHW even though CHW has less overall complaints and less unresolved complaints.

50. Further, despite CHW's repeated request to Companick, BBB refused to give CHW a grade of "no rating" which would be far less damaging than the unwarranted Letter Grade Rating it improperly assigned to CHW even though BBB has assigned a grade of "no rating" to other companies—namely, ones that have paid to become Accredited.

51. Indeed, in light of CHW's demonstrable quick response time to customer complaints, CHW informed Defendants in writing and orally that a "no rating" was more appropriate than an F because that grade did not represent an appropriate indication of the trustworthiness of CHW or its good faith attempts to resolve customer concerns, which Defendants were fully aware of.

52. Despite explicitly being put on notice by CHW that a "no rating" was appropriate and that CHW's F grade did not fairly and accurately represent CHW's trustworthiness, Defendants recklessly disregarded the undisputable data conclusively demonstrating that an F rating was inaccurate, and continued to misrepresent to the public that CHW was untrustworthy and did not timely respond to consumer complaints.

53. In fact, rather than making a good faith effort to respond to CHW's request for a no rating, Defendants engaged in a brazen cover up of their action.

54. Specifically, on or about, May 20, 2011, CHW, through its lawyers, contacted BBB through its lawyers to make a final attempt to resolve this dispute without court intervention. CHW provided BBB with a copy of the complaint this complaint to demonstrate just how serious CHW was about championing its rights.

55. Rather than engage in a good faith discussion of whether or not CHW should be entitled to a "no rating," after receiving CHW's complaint and after speaking with CHW's attorneys removed its policy with respect to the "no rating" from its website and told CHW that

no such policy existed (notwithstanding the fact that Companick sent CHW a copy of its grading policy several months earlier and that policy specifically included the purported criteria for a business to receive a "no rating.")

56. Thus, Defendants' conduct amply demonstrates that despite their advertisements of objectivity and trustworthiness to the public, there is absolutely nothing objective or trustworthy about how they conduct themselves.

57. Millions of users visit BBB's online platform every month, from inside and outside of New Jersey, seeking recommendation on businesses to use.

58. Many consumers accept BBB's ratings as dispositive on the trustworthiness of a business because many consumer mistakenly believe BBB is a governmental or quasi-governmental body.

59. Many consumers looking to purchase a home warranty visit BBB's website to help them choose a provider or to read reviews of a provider they have already chosen.

60. Numerous CHW customer and, more importantly, potential customers have used BBB's online service and seen CHW's unwarranted F grade.

61. Existing CHW customers were led to believe CHW was untrustworthy and either cancelled their home warranty contracts or demanded a refund of a portion of the purchase price.

62. Prospective CHW customers who viewed BBB's inaccurate rating of CHW believed that CHW was untrustworthy and opted to utilize another home warranty provider.

63. Thus, as a result of BBB's inaccurate grading system, CHW has been substantially harmed.

### FIRST CAUSE OF ACTION
### (False Advertising Under 15 U.S.C. § 1125(a))

64. CHW repeats and incorporates by reference all of the allegations set forth above.

65. Defendants intentionally and with knowledge published false descriptions and representations of fact about their own services.

66. Specifically, Defendants claimed that it offered an unbiased and accurate rating system for businesses, when in fact its rating system is biased, inaccurate, and failed to comply with any quantifiably measurable formula as BBB claims.

67. Because it has been in existence for so long, many consumers believe that BBB is a governmental or quasi-governmental entity.

68. Defendants also intentionally and with knowledge published false descriptions and representations of fact about CHW.

69. Specifically, Defendants claimed that CHW deserved a grade of F or lesser grades than warranted by BBB's ratings formula when no facts justified such a letter grade, and Defendants were aware that no such facts existed.

70. Defendants' statements and advertisements misrepresented the quality and nature of CHW's professionalism and client dedication as well as the quality, reliability, and safety of CHW's services.

71. Defendants made these false statements on the BBB Online Service platform, which is visited by millions of consumers each month.

72. Defendants made these false representations to discourage consumers from using CHW's services and to encourage and promote consumers' use of accredited competitors of CHW.

73. As a result of the foregoing, CHW has been substantially damaged.

## SECOND CAUSE OF ACTION
### (Tortious Interference with Prospective Economic Advantage)

74. CHW repeats and incorporates by reference all of the allegations set forth above.

75. CHW has prospective economic or contractual relationship with potential clients.

76. At all relevant times, Defendants were aware of CHW's prospective business relations.

77. As detailed *supra*, Defendants have repeatedly and intentionally interfered with Plaintiffs' economic and business relationships by virtue of the Letter Grade Rating it assigned to BBB and the inaccurate information published on the BBB's website about CHW.

78. Defendants' wrongful conduct was intentionally aimed at harming CHW in order to extort money form CHW.

79. Defendants' acts of interference with CHW's actual and prospective business relations are willful, wanton, intentional and deliberate.

80. Defendants' acts have proximately caused substantial monetary damage to CHW, including (i) extensive loss of business, customers and revenue, (ii) substantial expense, time, and effort addressing BBB's malevolent conduct, (iii) damage to Plaintiffs' business operations, trade name, reputation and good will, and (iv) extensive attorneys' fees.

## THIRD CAUSE OF ACTION
### (Tortious Interference with Contract)

81. CHW repeats and incorporates by reference all of the allegations set forth above.

82. CHW has prospective economic or contractual relationship with potential clients.

83. At all relevant times, Defendants were aware of Plaintiffs' actual business relations.

84. As detailed *supra*, Defendants have repeatedly and intentionally interfered with Plaintiffs' economic and business relationships by virtue of the Letter Grade Rating it assigned to BBB and the inaccurate information published on the BBB's website about CHW.

85. Defendants' wrongful conduct was intentionally aimed at harming CHW in order to extort money form CHW.

86. Defendants' acts of interference with CHW's actual business relations are willful, wanton, intentional and deliberate.

87. Defendants' acts have proximately caused substantial monetary damage to CHW, including (i) approximately $100,000 in loss of business, customers and revenue, through cancelled contracts (ii) substantial expense, time, and effort addressing Defendants' malevolent conduct, (iii) damage to Plaintiffs' business operations, trade name, reputation and good will, and (iv) extensive attorneys' fees.

### FOURTH CAUSE OF ACTION
### (Trade Libel/Injurious Falsehood)

88. CHW repeats and incorporates by reference all of the allegations set forth above.

89. Through its website and otherwise, Defendants have made derogatory statements about CHW and its business to the public.

90. Those statements were designed to prevent others from dealing with CHW or otherwise interfere with CHW's relationships with its customers and prospective customers.

91. Defendants' motivation for making these statements was to extort CHW into paying significant sums of money to BBB to become Accredited.

92. Defendants' statements have played a material part in inducing current customers and future customers from severing all ties with CHW.

93. As a direct and proximate result of the foregoing, CHW has been damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION CAUSE OF ACTION
### (Consumer Fraud under N.J. Stat. § 56:8-1, et seq.)

94. CHW repeats and incorporates by reference all of the allegations set forth above.

95. Defendants intentionally and with knowledge published false descriptions and representations of fact about their own services, and intentionally failed to correct these misrepresentations when they were pointed out by CHW.

96. Specifically, Defendants claimed that BBB offered an unbiased and accurate rating system for businesses, when in fact its rating system is biased, inaccurate, and failed to comply with any quantifiably measurable formula as BBB claims.

97. Defendants also intentionally and with knowledge published false descriptions and representations of fact about CHW, and refused to correct these fraudulent descriptions after being put on notice of their falsity by CHW.

98. Defendants intended that consumers rely upon these false misrepresentations so that businesses who paid them a fee to be accredited would benefit and businesses, like CHW, who refused to pay a fee would be coerced into using BBB's accreditation services.

99. As a result, CHW has been substantially damaged.

### SIXTH CAUSE OF ACTION
(**Declaratory Judgment**)

100. CHW repeats and incorporates by reference all of the allegations set forth above.

101. BBB purports to be a 501(c)(6) tax exempt corporation.

102. However, rather than properly acting as a business league dedicated to the promotion a universal common business interest as the Internal Revenue Code requires, BBB is actively engaged in collecting money from businesses as a fee for promoting and advertising those businesses to the direct detriment of similarly situated businesses that refuse to pay BBB for its services.

103. BBB falsely designates the money it collects from businesses as donations when in truth they are fees for accreditation.

104. This promotion of certain business interests over other business interests means that BBB is not a business league within the meaning of IRC 501(c)(6), and accordingly, BBB is not entitled to tax exempt status.

105. CHW seeks a declaratory judgment finding that BBB is not a tax exempt corporation under IRC 501(c)(6).

## **DEMAND FOR JURY TRIAL**

106. CHW demands a trial by jury on all claims properly triable before a jury**.**

## **RESERVATION OF RIGHTS**

107. CHW believes that further investigation through discovery or otherwise reveal that to numerous other businesses have similar claims against Defendants as CHW. As such, CHW explicitly reserves the right to amend its complaint to assert claims against Defendants on behalf of the class of businesses injured by Defendants' misconduct.

**WHEREFORE**, Plaintiff demands the following relief:

    a.    On the Complaint's First Cause of Action, a money judgment in favor of Plaintiff, in an amount to be determined at trial;

    b.    On the Complaint's Second Cause of Action, a money judgment in favor of Plaintiff, in an amount to be determined at trial;

    c.    On the Complaint's Third Cause of Action, a money judgment in favor of Plaintiff, in an amount to be determined at trial;

    d.    On the Complaint's Fourth Cause of Action, a money judgment in favor of Plaintiff, in an amount to be determined at trial;

    e.    On the Complaint's Fifth Cause of Action, a money judgment in favor of Plaintiff, in an amount to be determined at trial;

    f.    On the Complaint's Sixth Cause of Action, a judgment declaring BBB is not a tax exempt corporation;

    g.    pre- and post-judgment interest; and

      h.     such other and further relief as the Court deems just and proper.

Dated: New York, New York
       June 2, 2011

                                                    /s/ Aaron J. Solomon
                                                  Aaron J. Solomon, Esq.
                                                  OVED & OVED LLP
                                                  *Attorneys for Plaintiff*
                                                  101 Avenue of the Americas, 15th Floor
                                                  New York, NY 10013