<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

R E C E I V E D

FEB - 8 2012

AT 8:30
WILLIAM T. WALSH ͫ
CLERK

| | |
|---|---|
| CHW GROUP, INC. a/k/a Choice Home Warranty )<br><br>Plaintiff,   )<br><br>v.   )<br><br>BETTER BUSINESS BUREAU OF NEW )<br>JERSEY, INC. and MELISSA COMPANICK,   )<br><br><br>Defendants.   ) | Civil Action No.11-3261 (JAP-TJB)<br><br>**MEMORANDUM OPINON** |

**PISANO, Judge**

This matter comes before the Court upon Defendants Better Business Bureau of New Jersey, Inc. and Melissa Companick's (collectively "Defendants" or "BBB") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 9.) Plaintiff CHW Group, Inc. a/k/a Choice Home Warranty ("Plaintiff" or "CHW") opposes the motion. (DE 12.) The Court has reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant Defendants' motion to dismiss.

**I.   BACKGROUND**

CHW is a New Jersey company that sells home warranties. (Compl. ¶¶ 4, 7.) The warranties protect against the cost of repair or replacement of household systems and appliances such as dishwashers, refrigerators, and stoves. (*Id.* ¶ 7.) If there is "an issue with an item

covered by" a CHW warranty, the customer "contacts CHW's claims center" and the item is repaired or replaced pursuant to the warranty. (*Id.* ¶ 8.)

BBB is a New Jersey 501(c)(6) tax exempt corporation that provides consumers with a means to investigate a business or charity's reputation. (*Id.* ¶ 5, 10.) BBB's stated mission is to: "(1) create a community of trustworthy businesses, (2) set standards for marketplace trust, (3) encourage and support best practices, (4) celebrate marketplace role models, and (5) denounce substandard marketplace behavior." (*Id.* ¶ 11.) To that end, BBB has two rating programs. (*Id.* ¶ 12.) The first is an "accreditation program." (*Id.* ¶ 13). According to CHW, businesses pay "donations" in order to be labeled by BBB as trustworthy or "Accredited." (*Id.* ¶¶ 14, 15.) But Plaintiff avers that the "donations" are really just "substantial fees." (*Id.*) The annual fee required depends on an undisclosed formula, but it can range from hundreds of dollars to thousands. (*Id.* ¶ 14.)

The second rating program is a letter grading system. (*Id.* ¶ 16.) Plaintiff asserts that BBB employees arbitrarily and subjectively assigned numerical values to factors including corporate size, number of complaints, severity of complaints, and the duration a complaint is left unresolved. (*Id.* ¶ 17.) BBB then enters the numerical values into an undisclosed algorithm that generates a letter grade ranging from A+ to F. (*Id.* ¶¶ 16, 18.) Alternatively, BBB may disregard a grade and assign a "no rating" if it believes that a grade "does not represent an appropriate indication of" a business's trustworthiness. (*Id.* ¶ 19.) Plaintiff claims that a non-accredited business will "receive a rating at a minimum of two letter grades lower" than a business that pays the fee to become accredited. (*Id.* ¶¶ 21, 22.) The effect of the two rating programs, Plaintiff alleges, is that BBB "is charging businesses for its seal of approval." (*Id.* ¶ 24.)

2

While CHW has chosen not to participate in the accreditation program, the company is listed on the BBB website with a letter grade viewable by the public. (*Id.* ¶¶ 26, 47.) CHW has consistently received a grade of D- or F. (*Id.* ¶ 33.) When CHW asked why it had received an F, Melissa Companick, President of BBB, explained it was because CHW had failed to address consumer complaints. (*Id.* ¶ 34.) But CHW points to an example demonstrating how "absurd and arbitrary" the letter grading algorithm is. (*Id.* ¶ 35.) In 2010, BBB forwarded a complaint to CHW, and CHW responded immediately to the customer. (*Id.* ¶ 36.) The customer took several weeks to respond to CHW, thereby lengthening the time it took for the complaint to be considered resolved. (*Id.*) CHW alleges that "giving CHW a negative grade for the consumer's delay is not only unfair, but it is a blatant misrepresentation to the public of the quality of CHW's customer service and trustworthiness." (*Id.* ¶ 37.)

CHW has been unable to raise its letter grade. It requested appeal of the grade and asked to be given the designation of "no rating." (*Id.* ¶ 39, 51.) But the F letter grade remains. CHW asserts that BBB advised it that if "CHW paid the fee for Accreditation," the letter grade "would dramatically improve." (*Id.* ¶ 46.) From this, CHW concludes that "BBB's true goal is to extort money" informed by the fact that "there is absolutely nothing objective or trustworthy about how [BBB] conducts themselves." (*Id.* ¶¶ 44, 56.) As many consumers consider BBB's rating system unbiased, accurate, and "dispositive on the trustworthiness of a business," CHW alleges that the negative misrepresentations made by BBB with respect to CHW's quality and reliability have harmed its business. (*Id.* ¶¶ 58, 61-63, 66.)

On June 6, 2011, CHW filed suit against BBB asserting the following claims: (1) violation of the Lanham Act's false advertising provision; (2) tortious interference with a prospective economic advantage; (3) tortious interference with a contract; (4) trade

3

libel/injurious falsehood; and (5) violation of New Jersey's Consumer Fraud statute.  CHW also brought a sixth action under the Declaratory Judgment Act, 29 U.S.C. § 2201 et seq., seeking a declaratory judgment that BBB is not a tax exempt corporation under Internal Revenue Code § 501(c)(6).  However, the parties consented to this claim's dismissal with prejudice. (DE 25.)

On August 3, 2011, Defendants moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6).  (DE 9.)  Specifically, Defendants argue that Plaintiff fails to state a claim for false advertising under the Lanham Act, and that if the Lanham Act claim is dismissed, the basis for the Court's exercise of supplemental jurisdiction over the remaining state law claims is extinguished.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  The Supreme Court set forth the standard for addressing a motion to dismiss pursuant to Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007).  The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do[.]"  *Id.* at 555 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the standard of review for a motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]." (internal quotation marks omitted)).  Therefore, in order for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the

assumption that all allegations in the complaint are true (even if doubtful in fact) . . . ."

*Twombly*, 550 U.S. at 555 (internal citations and footnote omitted). The Supreme Court has

emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish

factual contentions from "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## III.   DISCUSSION

### A.   Legal Standard

The Lanham Act is primarily concerned with trademark protection. Plaintiff accuses

Defendants of violating § 43(a) of the Lanham Act, which prohibits false advertising. Section

43(a) states in pertinent part:

> Any person who, on or in connection with any goods or services . .
> . uses in commerce any word, term, name, symbol, or device, or
> any combination thereof, or any . . . false or misleading description
> of fact, or false or misleading representation of fact, which—
>
> . . . (B) in commercial advertising or promotion, misrepresents the
> nature, characteristics, qualities, or geographic origin of his or her
> or another person's goods, services, or commercial activities, shall
> be liable in a civil action by any person who believes that he or she
> is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). To succeed on a claim of false advertising, a plaintiff must prove: "(1) that

the defendant has made false or misleading statements as to his own product or another's; (2)

that there is actual deception or at least a tendency to deceive a substantial portion of the

intended audience; (3) that the deception is material in that it is likely to influence purchasing

decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a

likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Warner-*

*Lamber Co. v. BreathAsure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000).

The statute requires that misleading representations appear in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(B); *see also Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 455 (D.N.J. 2009). The Lanham Act, however, does not define the term "commercial advertising or promotion." A frequently used four-part test defines the term to mean (1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; (4) disseminated sufficiently to the relevant purchasing public to constitute "advertising or promotion" within that industry. *Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1537 (S.D.N.Y 1994); *see also Bracco Diagnostics*, 627 F. Supp. 2d at 455-56; *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 576 (E.D. Pa. 1999), *aff'd* 229 F.3d 1139 (3d Cir. 2000).

The Third Circuit has yet to address this threshold test. Plaintiff asserts that the test is questionable law and that the Third Circuit would refuse to adopt it. (Pl.'s Br. at 8.) The four requirements were originally set out by the Southern District of New York in *Gordon & Breach* and subsequently adopted by several circuits. *See, e.g., Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999); *Seven-Up Co.v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996).

Plaintiff asserts that the Second Circuit rejected the *Gordon & Breach* test in *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002). (Pl.'s Br. at 8-9.) However, in reviewing the test, the Second Circuit expressly adopted the first, third, and fourth elements. *Fashion Boutique*, 314 F.3d at 58. It made no determination as to the second element.

*Id.* ("To decide this appeal, we need not decide whether the second element—that defendant and plaintiff be competitors [sic].").

Plaintiff alternatively contends that the Third Circuit would reject the second element, relying on *Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (3d Cir. 1998). But Plaintiff misreads this case. In *Conte Bros.*, the Third Circuit developed a prudential standing test for Lanham Act claims that was originally created by the Supreme Court for Clayton Act cases. *See Associated General Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 538-44 (1983). Under this test, a court determining whether a party has prudential standing under § 43(a) first analyzes "the nature of plaintiff's alleged injury" asking whether "the injury [is] of a type that Congress sought to redress in providing a private remedy for violations of the Lanham Act[.]"[1] *Joint Stock Society v. UDC North America*, 266 F.3d 164, 179 (3d Cir. 2001). The court in *Conte Bros.* found that the plaintiff did not have prudential standing to bring a Lanham Act claim in part because the plaintiff failed to allege that its "commercial interests [] have been harmed by a competitor's false advertising." *Conte Bros.*, 165 F.3d at 234 (quoting *Granite State Ins. Co. v. AAMCO Transmissions, Inc.*, 57 F.3d 316, 321 (3d Cir. 1995)). Considering the Third Circuit's Lanham Act prudential standing test asks whether the parties are in commercial competition, it would likely endorse second element of the *Gordon & Breach* test. Therefore, this Court will apply the test to Plaintiff's false advertising claim to determine whether BBB's representations constitute "commercial advertising or promotion" as required by § 43(a)(B).

---

[1] The other factors set forth by the Third Circuit in *Conte Bros.* are the directness of the asserted injury, the proximity of the plaintiff to the alleged injurious conduct, the speculativeness of the damages claim, and the risk of duplicative damages or complexity in apportioning damages. *Conte Bros.*, 165 F.3d at 233 (citing *Associated General Contractors*, 459 U.S. at 540-44).

### B.    Application

Taking the facts set forth in the complaint as true, the Court finds that Plaintiff has not adequately plead a claim of false advertising under the Lanham Act. Specifically, Plaintiff cannot satisfy the second or third elements of the "commercial advertising and promotion" threshold test because Defendants are neither in commercial competition with the Plaintiff nor were Defendants' rating programs aimed at influencing CHW's customers to buy BBB's services.

First, BBB is not in commercial competition with the Plaintiff. This case is similar to other cases brought against business-rating companies, all of which find that such companies, as a matter of law, are not in commercial competition with the businesses they rate. In *Hy Cite Corp.*, the defendants ran a website that contained reports and editorials exposing bad business practices and allowed consumers to file and post complaints anonymously. *Hy Cite Corp. v. Badbusinessbureau.com LLC*, 418 F. Supp. 2d 1142, 1145 (D. Ariz. 2005). The plaintiff, a target of one of the defendants' reports, alleged a violation of the Lanham Act's false advertising provision stating that the reports were false and misleading. *Id.* The court dismissed the claim holding that "making a false representation for a purpose other than competition is not actionable under the Lanham Act, otherwise the Lanham Act would create a federal tort of misrepresentation." *Hy Cite Corp.*, 418 F. Supp. 2d at 1151; *see also Bosley Med. Inst. Inc. v. Kremer*, 403 F.3d 672, 679-80 (9th Cir. 2005) (finding that statements made on a disgruntled customer's website concerning the plaintiff's hair restoration services were not actionable under the Lanham Act); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 551 (E.D. Va. 2008) (holding that the plaintiff failed to state a claim of false advertising where the parties' goods were unrelated and where the parties were not in commercial competition).

In this case, CHW is not in commercial competition with BBB, and the parties do not offer related services. CHW is in the business of selling home warranties, whereas BBB is a non-profit corporation that is essentially in the business of evaluating and rating other businesses. (Compl. ¶¶ 5, 6, 10.) Therefore, Plaintiff's allegations do not satisfy the second prong of the threshold test.

Second, even assuming the grade given to CHW is false or misleading, it was not generated for the purpose of influencing CHW's customers to buy BBB's goods or services. Plaintiff alleges that Defendants' letter grade system as applied to non-accredited businesses is for the purpose of influencing those businesses to buy BBB's accreditation service. (Compl. ¶ 44.) However, that allegation is materially different from what is required by the "commercial advertising and promotion" test. The relevant question is whether Defendants' ratings were for the purpose of influencing CHW's customers to purchase BBB accreditation services, not whether the ratings influenced CHW to purchase BBB's services. The complaint raises no concern that the home warranty business CHW has cultivated will be diverted to BBB because of CHW's grade and non-accreditation. *See Conte Bros.*, 165 F.3d at 234 (noting that the Lanham Act's general purpose is to "secur[e] to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not." (citation omitted)). Indeed, CHW's business cannot be diverted given that BBB does not sell home warranties. As a result, Plaintiff has failed to satisfy the third element of the threshold "commercial advertising and promotion" test.

In sum, Plaintiff failed to allege that Defendants were engaged in "commercial advertising or promotion" as required by § 43(a)(B) of the Lanham Act. Consequently, Plaintiff

has failed to state a claim for false advertising and Plaintiff's First Cause of Action must be dismissed.

Having dismissed Plaintiff's First Cause of Action, which provided the basis for the Court's exercise of subject matter jurisdiction pursuant to 28 U.S.C. § 1331, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. A district court, under 28 U.S.C. § 1367(c)(3), "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." *Edlin Ltd. v. City of Jersey City*, No. 07-3431, 2008 U.S. Dist. LEXIS 41118 (D.N.J. May 23, 2008); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right[.]"). As the Court will dismiss the Lanham Act claim, which provides the basis for the Court's original jurisdiction, it will also decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Therefore, the Court will dismiss the Second through Fifth Causes of Action: tortious interference with a prospective economic advantage, tortious interference with a contract, trade libel/injurious falsehood, and violation of New Jersey's Consumer Fraud statute.

## IV.   CONCLUSION

For the reasons above, the Court grants Defendants' motion and dismisses the First Cause of Action of the complaint with prejudice, and the Court declines to exercise supplemental jurisdiction over the remaining Causes of Action. An appropriate order is filed herewith.

Dated: February ⟵ , 2012

_____
United States District Judge

10